## ADICKES v. ALLISON & BRATTON.

1. A Circuit judge having by statute the right to adjourn his court to a future day in case "a dangerous and general disease" is prevailing, and an adjournment of a regular term to a future day having been ordered, no inquiry can be made as to whether the conditions existed that authorized the exercise of this power; and a judgment rendered at such adjourned term is not void.

2. In a case at law tried by the Circuit judge without a jury, his findings of fact cannot be reviewed on appeal.

3. The power of attorney in this case held to give the attorney authority to consent to a sale of his principal's property, and to the application of the proceeds to executions in a stated order; and such consent being given, and by all parties acted on for ten years, the principal is estopped from claiming a different application by law of such proceeds.

4. An action was commenced against a partnership, but one of the partners, being out of the state, was not served; judgment was rendered against the partnership and the partner served. Several years afterwards, the absent partner having returned to the state, summons was served upon him to show cause why he should not be bound by this judgment, and in his return he pleaded the statute of limitations as a defence. *Held,* that the claim not being barred when the action was commenced, the plea could not be sustained. *Code,* § 380.

5. The decision of the Circuit judge disposed of all the issues, directed judgment for the balance due on a former judgment particularly stated in the record, and ordered execution to issue, but referred it to the clerk to calculate the interest and ascertain such balance. *Held,* that it was a final judgment and in proper form.

6. Such a reference was a mere incident to the enforcement of the judgment already rendered, and did not require confirmation.

7. In an action at law tried by the court, the decision of the judge is not the formal judgment.

8. It was error to make the interest due on the former judgment an
interest bearing sum from the time the absent partner was declared
individually liable. The form of judgment in such cases suggested.

Before KERSHAW, J., York, March, 1883.

The decision of the Circuit judge was as follows:

The plaintiff, H. F. Adickes, in the above stated case, obtained
judgment therein on February 14, 1874, on two promissory notes
of the defendants, as copartners, for the sum of $641 and costs,
$22.70, the principal of said judgment bearing interest from Feb-
ruary 11, 1874. The summons in said case was served only on
James B. Allison, and the judgment was entered against the firm.
The plaintiff died, and Mary L. Adickes, the executrix of his will,
having duly qualified, issued a summons against the defendant, J.
R. Bratton, requiring him to show cause why he should not be
bound by said judgment in the same manner as if he had been
originally served with summons in said action; which said sum-
mons was served on the defendant Bratton in March, 1882.

The said defendant answered the summons, and resisted its
demands on several grounds: 1. He denied that any such judg-
ment was recovered by the plaintiff. 2. He claimed that if any
such demand ever existed, it had been paid and satisfied from
sales of his property. 3. He alleged that this proceeding was
not commenced within the time limited for the commencement of
civil actions or proceedings. These are not literally, but substan-
tially, the propositions contained in the answer.

The cause was heard upon testimony and the arguments of
counsel. For convenience, the facts will be grouped under the
several heads, and stated in connection with the conclusions of
law upon each point presented. Under the first head, the point
made by the defendant is, .that the Court of Common Pleas for
York county was not in session at the time the alleged judgment
was rendered, as claimed; and hence, that the paper described as
a judgment was not a judgment. The facts are these: the time
fixed by the statutes for holding the Court of Common Pleas for
the winter term of 1874 was the Wednesday after the second
Monday of January. On the second day of January, 1874, the
presiding judge of that Circuit wrote a letter to the clerk, direct-

ing him after he should have opened the Court of General Sessions on the second Monday of January, pursuant to law, to adjourn the same to the second Monday of February, 1874, and to open the Common Pleas and adjourn the same to the Wednesday after the second Monday in February, and to make due publication thereof.

On Thursday, January 8, the said letter, with a proper heading, was published by the clerk in the Yorkville *Enquirer*, and the publication continued for five issues of that paper, being a weekly newspaper published at Yorkville. Wednesday, January 14, 1874, the Court of Common Pleas was opened by the clerk of York county, and adjourned to the Wednesday after the second Monday in February then next ensuing, at 10 o'clock, a. m., and such action was entered upon the minutes. Wednesday, February 11, 1874, the court met pursuant to adjournment, the Hon. T. J. Mackey, Judge of the 6th Circuit, presiding: which also appears upon the minutes. During the term thus opened, on February 14, 1874, the judgment above stated was rendered in favor of the plaintiff, and duly entered under the direction of the court, by default of defendant to answer or demur.

On February 24, 1874, an order was entered, signed at chambers, made on the motion of W. C. Beatty, Esq., attorney for plaintiffs in the cases of *W. H. Schieffelin & Co.* v. *Allison & Bratton, William McGill and Thomas McGill* v. *same*, and *H. F. Adickes* v. *same*, reciting that a levy had been made by virtue of the said executions upon property of the firm, some of which was of a perishable nature, and ordering that the said property be sold by the sheriff on March 13, next after the date of said order. This order was consented to in writing by the defendant, James B. Allison, and by John T. Lowry, who signed the name of J. R. Bratton, *per* John T. Lowry.

John T. Lowry was made the attorney in fact of the defendant, J. R. Bratton, by letters duly executed, bearing date January 18, 1872. These letters authorized the said attorney to do the following acts for his said principal: to sell, transfer, and deliver all his personal property in the county of York, in said state; to ask, demand, levy, and require, recover, and receive all moneys, debts, goods, wares, merchandise, effects, and things, due, owing,

payable, and belonging and coming unto the said Bratton; to sell and convey all his real estate in said county, whenever, in his discretion, it should become advisable to do so, or, if the said attorney should deem best, to make a deed of gift of the real estate to Mrs. Bratton for life, with remainder to the children that he, said Bratton, should beget of her; to sign, execute, and deliver all such deeds and conveyances as the said attorney should deem fit and expedient for the purpose of carrying out the powers conferred; to use all due means, course, and process in law for the full, effectual, and complete execution of all the business aforesaid, and, in the name of the said Bratton, to make and execute due acquittance and discharge; to appear for the said principal, and to represent him before the governor, judges, justices, officers, and magistrates of the law in any court or courts of judicature, and, on his behalf to answer, defend, and reply to all actions, causes, matters, and things whatever *relating to the premises.* Also, to submit any matter in dispute, respecting the premises, to arbitration or otherwise, &c., &c.; and generally to say, do, act, transact, determine, accomplish, and finish all matters and things whatsoever relating to the premises, as fully as he, the said Bratton, ought or might personally do if present, although the matter should require more special authority than therein comprised; he, the said Bratton, ratifying, allowing, and holding firm and valid whatsoever his said attorney should lawfully do, or cause to be done, in and about the premises, &c.

The firm of Allison & Bratton was dissolved June 3, 1872, and due notice thereof given in the newspapers. By the said notice, all demands against the firm were required to be presented for payment to Dr. J. B. Allison or John T. Lowry, the latter of whom (it stated) "was legally authorized te represent Dr. J. R. Bratton in all settlements." This notice was signed by J. R. Bratton and J. B. Allison.

From the time of its rendition, the said judgment was regarded and acted upon by all parties as good and valid and of force, without any question until these present proceedings were instituted. Sales were made by the sheriff by virtue of the levy recited in the above-mentioned order; and moneys derived from other sales made by the sheriff, under executions in his office,

have been applied to this execution; and the judgment was relied on as a subsisting judgment, having a lien to sustain a sale of land, in the case of *Adickes* v. *Lowry*, 12 *S. C.*, 107, to the printed briefs of which the court has been referred, by consent of counsel, for some of the facts in this case. Upon this point I conclude, as matter of law, that for the purpose of this decision, the said judgment is sufficient to constitute a basis for this proceeding.

The next point to be considered is, as to whether the said judgment has been paid or satisfied. The following judgments were proven by the production of the judgment rolls:

*a.* Hugh Galloway v. J. R. Bratton, entered and execution issued thereon January 15, 1871, for $100.60.

*b.* Schieffelin & Co. v. J. B. Allison and J. R. Bratton, judgment entered and execution issued May 22, 1872, for $354.36.

*c.* Dowie, Moise & Davis v. same, judgment entered and execution issued July 28, 1873, for $194.49.

*d.* L. M. Grist v. same, judgment entered and execution issued July 29, 1873, for $125.40.

*e.* McGills, administrators, v. same, judgment entered and execution issued September 30, 1873, for $675.05.

*f.* Agnes B. Harris v. J. R. Bratton, judgment entered February 11, 1874, for $666.95, and execution issued February 14, 1874.

*g.* H. F. Adickes v. James B. Allison and J. R. Bratton, judgment entered and execution issued February 14, 1874, for $663.76.

Of these, the judgment of Agnes B. Harris was paid from other sources, and need not further be considered.

The following executions were levied on land of the defendant, J. R. Bratton, at the dates hereinafter named, to wit: Grist v. Allison & Bratton, September 22, 1873; Dowie, Moise & Davis v. same, the same day; Schieffelin & Co. v. same, November 5, 1873; McGills v. same, the same day. From the recitals of the consent order above mentioned, dated February 24, 1874, it is in proof that levies had been made of the executions of Schieffelin, McGills, and Adickes, on the personal property of the firm of Allison & Bratton, prior to that date.

The levy in the case of Schieffelin was the first made. This execution, therefore, was entitled to the proceeds of the sale of the personalty, if the levy was valid. It was recognized by the consent order aforesaid. Mr. Beatty, the attorney for the plaintiffs in all three executions, directed this application of the proceeds to that execution, and the sheriff so applied them, except the sum of $25.00 paid to the plaintiff, H. F. Adickes, for rent. The first levy made under this execution of Schieffelin was on land of defendant Allison, August 27, 1873.

So far as any facts in evidence here inform us, that execution had lost its active energy before that period, and no valid levy could then or thereafter be made without renewal, as the law then stood. (See case of *Adickes* v. *Lowry*, *supra*.) The proceeds of the sales of personalty, therefore, would have been applicable to the other two executions levied upon it, *pro rata*, except for the effect of the consent of Bratton to the order, by his attorney, Lowry, recognizing the levy and sale under the execution of Schieffelin and the others therein named.

Lowry was authorized to represent Bratton in all settlements of the copartnership affairs, as appears from the published notice of dissolution above mentioned. As that order and the proceedings under it related to the business of the copartnership, and were in effect, to the extent they went, a settlement of the copartnership affairs, it was competent for Lowry to consent for Bratton to the application of the personalty as above set forth. This view is greatly strengthened by the acquiescence of Bratton for so many years. I conclude, therefore, that the judgment and execution of plaintiff herein are not entitled to be considered as affected by the levy and sale of the said personal property of the firm, and the applications of the proceeds to the execution in favor of Schieffelin & Co.

The other payments made, which are hereinafter to be stated, still leave a portion of the debt of the plaintiff unpaid and the judgment unsatisfied. On this point, it may be proper to remark that the levy and sale, and the application of the proceeds of the sale of the Dennis tract of land of the defendant Bratton, can in no wise be treated as payment or satisfaction of plaintiff's judgment in this case, beyond the money paid to plaintiff therefrom, because

the judgment and execution thereon could only affect the joint property of Allison & Bratton and the individual property of the defendant Allison. The separate property of Bratton could not have been levied on by virtue of the judgment, nor could the sheriff apply the proceeds of such property, when sold, to such judgment or execution, when it appeared from the record that he had not been served with process in the case.

The next question to be disposed of is that of the effect of the statute of limitations. If that defence had been set up to the action when originally commenced, it would not have been applicable, because the causes of action were not then barred. If, however, the action is to be regarded as having been commenced at the date of the service of the present summons upon the defendant Bratton, the result would be quite different.

As this question is new here, reference has been made to decisions made elsewhere, showing how it has been dealt with by the courts of New York, from which state we derive these provisions of our code. The case of *Bruen* v. *Bokee*, 4 *Denio*, 56, relied on by the counsel for defendant Bratton, does not appear to me to apply to the case here. That was a proceeding by action on a joint judgment against a party not served in the original action. Such was the remedy provided by the statutes of New York at that time. The plea was "that the cause of action" upon which the suit was brought "did not accrue at any time within six years next before the commencement of this suit." The question presented, therefore, was, did the judgment prevent the running of the statute of limitations? Upon the authority of *Carma* v. *Townsend*, 6 *Wend.*, 206, it was held that the plea was good.

The case of *Berlin* v. *Hall*, 48 *Barb.*, 442, is more to the point. The code in New York, prior to 1847, authorized the proceeding by summons, as here, and allowed the party summoned to answer, denying the judgment, or setting up any defence which may have arisen subsequently; and, in addition thereto, if he be proceeded against according to section 375, he may make the same defence which he might have originally made to the action. By an amendment to this section, adopted in 1849, the following words were added: "*except the statute of*

*limitations.*" It was contended in *Berlin* v. *Hall* that the proper construction of the section, as amended, required that the words added should be considered as transferred to the first paragraph, so as to qualify that portion of the section authorizing the party to interpose defences arising subsequently to the judgment. The court held otherwise; and, *arguendo*, remarked that the code, by its literal rendering, precluded the defence of the statute of limitations when it arose before the commencement of the original action, but allowed it when it arose subsequently. If this were correct, the judgment would have the effect of renewing the causes of action, but leaving them subject to the statute from that time, as in the case of a new contract. It proceeded upon the principle that the suffering of a judgment by a joint debtor was equivalent to an admission of the debt, which, under the decisions there, as here, would renew the debt against all the parties to the contract. In order to give effect to the five words added to this section of the New York code by the amendment of 1849, this construction was necessary and not unreasonable.

Since the decision in *Berlin* v. *Hall* (1867), these words have been stricken out by a subsequent amendment, and our code has the section as last amended. In lieu of the words "*except the statute of limitations*," we have the following: "If the summons were originally commenced, and such defence had been *then* interposed." (See *Code*, § 380, formerly 396.) A party proceeded against, in a case of this character, is allowed to answer, "denying the judgment," or "setting up any defence which may have arisen subsequently," and also any defence which he might have made *to the action*, if the summons had been served on him at the time when the same was originally commenced, and such defence had been *then* interposed to such action. If the defence of the statute had been "then interposed," it would not have been good, and under this section no greater effect can be given to it now when it is a defence which has arisen since the judgment and sufficient time has elapsed to make it a good plea. The language employed by the court in *Berlin* v. *Hall* is applicable to this case: "It had long been held that a payment or a promise by one member of a firm revived the debt and barred the statute, although the firm had been long dissolved at the time of the pay-

ment or promise.  * * *  The amendment gives the same effect to a judgment, which is in effect a confession of the debt by record evidence." The language of our code as effectually excludes the plea of the statute as the express exception inserted by the amendment of 1849, and the effect is the same as that given to the exception by the decision in *Berlin* v. *Hall.*

The summons against the defendant Bratton was served March, 1882. The judgment against Allison & Bratton was entered February 14, 1874. The defendant, J. R. Bratton, left the state October 15, 1871. He returned in June, 1872, remained one month, and again left the state, and did not return until November 19, 1878. Regarding the entry of judgment as a new starting point for the statute, and deducting the period of Dr. Bratton's absence, the bar of the statute was not complete when the present summons was served. Hence the statute of limitations is not a valid defence.

Another and simpler answer to the statute is that it is not a new action, but the service of a summons upon a joint debtor to show cause why he should not be bound by a previous judgment recovered against his co-contractor in an action commenced before the bar of the statute was complete. For the purposes of the statute, the action was commenced, as to Bratton, when the summons was served upon his co-defendant, Allison. *Code,* § 120. The action was not barred then, and that is the time to which reference must be had. The statute does not run *pendente lite.*

It has been supposed that the execution of plaintiff should be credited with the amount derived from the sales of personal property under the order dated February 24, 1874. I arrive at a different conclusion. The application of that money to the execution of Schieffelin & Co., though improper, was virtually assented to by Lowry, as the attorney of Bratton, acting within the scope of his authority, and was in like manner approved by the long acquiescence of Dr. Bratton without complaint. Plaintiff, without any fault on his part, and without prospect of recovery, would suffer the loss if that application of the money were now set aside.

The defendant Bratton, by his attorney, recognized the levy of the execution of Schieffelin & Co. That levy was the first

made upon the goods in question, and, if a levy at all, consti-
tuted the first lien on them.    That lien having been recognized
by the other parties interested, and having been acted on by the
sheriff, without notice of dissent or complaint until after a lapse
of six years, when the sheriff, if he were held liable for the same,
could no longer protect himself by a recovery of the money from
the party to whom it was paid, and the plaintiff himself would
be without remedy, the defendant Bratton and all the other
parties so consenting and acquiescing, are equitably estopped
from asserting that the said application was not correct.    *Doe* v.
*Oliver*, 2 *Sm. Lead. Cas.*, 562; *Bollman* v. *Bollman*, 6 *S. C.*, 46.

It is therefore ordered and adjudged that the said plaintiff,
Mary L. Adickes, executrix of H. F. Adickes, deceased, have
judgment against the defendant, J. R. Bratton, for the amount
of the aforesaid judgment recovered by the said H. F. Adickes
against the said Allison & Bratton, for the amount of said judg-
ment and interest thereon now remaining due and unpaid; that
it be referred to the clerk of this court to compute the amount so
due and unpaid, in accordance with the principles herein de-
clared; and that the plaintiff have judgment for the same,
together with the costs of these proceedings, to be adjusted by
the clerk, and that plaintiff have execution therefor.

From this decision, J. R. Bratton appealed on the following
exceptions:

1. Because of error in holding that the Court of Common
Pleas for York was legally holden on February 14, 1874, and
the judgment then rendered in favor of H. F. Adickes against
Allison & Bratton was a valid judgment.

2. Because of error in holding that said judgment, if properly
rendered, had not been satisfied, in whole or in part, by the
sales of personal property, levied under the execution thereon in
March, 1874.

3. Because of error in holding that the dormant execution of
Schieffelin & Co. against said firm was entitled to be paid out of
the proceeds of sales of personal property, by reason of a con-
sent order for said sale, in preference to valid existing executions
of active energy.

4. Because of error in holding that a consent to sell, made on February 24, 1874, could give validity and priority to a void levy alleged to have been previously made under a dormant execution.

5. Because of error in admitting oral evidence of a levy under a dormant execution, when such execution, on being produced, contained no evidence of such levy.

6. Because of error in holding that J. T. Lowry had authority, as attorney in fact, to consent to a renewal of an execution against the firm of Allison & Bratton under the power produced, which limited his authority to the *individual* concerns of J. R. Bratton.

7. Because of error in holding in effect that a consent to renew a dormant execution gives it vitality, without taking out new process from the court.

8. Because of error in holding that the defendant Bratton had acquiesced in the illegal application of moneys to a judgment not of force against him, and while he was absent from the state.

9. Because of error in not holding that the statute of limitations could be interposed as a bar to plaintiff's claim.

10. Because the judgment rendered against the defendant is a nullity, inasmuch as it fails to specify any sum whatever to be inserted therein.

*Messrs. Hart & Hart* and *Giles J. Patterson,* for appellant, cited 15 *Stat.,* 325, 456; *Const.,* art. IV., § 16; 3 *S. C.,* 567; 7 *Id.,* 374; *Gen. Stat.* of 1872, ch. XXII, § 20; *Freem. Judg.,* § 121; 20 *Ark.,* 77; 1 *Bail.,* 142; 2 *McMull.,* 156; *Dudley,* 46; 19 *S. C.,* 461; 2 *Bail.,* 361, 413; *Code* (1870), §§ 306–316; 3 *Hill,* 283, 292; 3 *McCord,* 560; 13 *S. C.,* 120; 5 *Id.,* 58.

*Mr. C. E. Spencer,* contra.

April 26, 1884.   The opinion of the court was delivered by

MR. JUSTICE MCGOWAN.  [Omitting the statement of facts, which is fully given in the Circuit decision.]  Exception 1 makes the point that the original judgment of H. F. Adickes against

Allison & Bratton was illegal and void, for the reason that the court which rendered it did not have jurisdiction to do so. [Here follows a statement of the facts as given in the Circuit decision, *ante,* p. 246.] Did the court have jurisdiction to render the judgment at the time it was rendered? "The power to hear and determine a cause is jurisdiction; it is *coram judice* whenever a case is presented which brings this power into action; but before this power can be affirmed to exist, it must be made to appear that the law has given the tribunal capacity to entertain the complaint against the person or thing sought to be charged or affected." *Freem. Judg.,* § 118. There is no doubt here as to the subject matter and the parties being within the jurisdiction of the court or as to the alleged judgment having been rendered according to the usual practice in such cases. But the technical objection is raised that its date shows that it must have been rendered when the tribunal which undertook to do so was not in judicial harness or possessed of that peculiar virtue known as judicial power.

The Court of Common Pleas is a court of general jurisdiction, and the records of such courts are absolute verities, not to be impugned by averment or proof to the contrary. In a collateral proceeding, nothing shall be intended to be out of the jurisdiction of a superior court but that which expressly appears to be so. *Freem. Judg.,* § 124. But it is said that the record itself here shows that the alleged judgment was rendered on February 14, 1874, which the statute shows was a time not within the regular term for York county. That is true; but the same record shows that the Circuit judge directed the court to be adjourned to another day, which he had the power to do under section 30 of the code of procedure (1870), which provided that "the judge of the Circuit Court shall have power to direct any Circuit Court in his Circuit to be adjourned over to a future day designated in a written order to the clerk of said court, whenever there is a dangerous and general disease at the place where such court is usually holden." The judge of the Circuit Court in this instance exercised that power, and no inquiry is admissible as to whether there was or was not "a dangerous and general disease" at Yorkville at the time fixed for the regular term of

the court.   It was in the province of the judge to determine that matter for himself, and we are not at liberty to assume that he decided it wrong.   Even if in that regard he committed error in fact, we do not see that it should follow that a judgment regularly entered at the adjourned term would for that reason necessarily be void in the absolute sense.   See *Freem. Judg.*, § 122, and notes.

Exceptions from 2 to 8, inclusive, complain of the decision of the Circuit judge adverse to the plea of payment.   That was a question of fact, and this being a proceeding at law, this court has no right to review the evidence upon that subject.   The decision of the Circuit Court must stand as the special verdict of a jury.   It is alleged, however, that there was involved in the finding an error of law in this that the Circuit judge held in effect that consent to renew a dormant execution gave it vitality without taking out new process by the court, and that J. T. Lowry, as attorney for Bratton, had the authority to consent to the renewal of an execution against the firm of Allison & Bratton under his power, which limited his authority to the individual concerns of Bratton.   In very general terms the facts are that certain personal property, perishable in its nature, drugs, &c., had been levied by the sheriff under the executions of Schieffelin & Co., McGill's administrators, and the aforesaid execution of H. F. Adickes; and on February 24, 1874, John T. Lowry, the agent of John R. Bratton, consented to an order, setting out all these executions according to their dates, reciting the levy and directing sale of said articles so levied; which sale was made and the proceeds applied to the execution of Schieffelin & Co., which was the oldest, and, as stated, had been first levied.

Under these circumstances, it was urged for the defendant Bratton, that the execution of the plaintiff Adickes (though junior in date) should have been credited with the amount of said sales, and, that not having been done by the sheriff, the said judgment to that extent must be regarded as *ipso facto* paid. We think that in this objection the precise point ruled by the judge is overlooked.   He did not hold that the consent to the sale in the terms of the order directing it, was intended or had the effect, without new process, actually to renew the execution of

Schieffelin & Co., to which the money was applied. But as we understand it, he held, first, that the very general and comprehensive terms of the power of attorney to Lowry, authorized him to consent to the sale, which under the circumstances was a virtual consent to the application of the proceeds as made; and second, that after such consent had been given and acted on by all parties, it estopped Bratton himself from afterwards objecting to it, precisely as if he in person had given that consent. Taking this view of the rulings of the Circuit judge, we cannot say that he committed error of law, either as to the right of Lowry under the power of attorney from Bratton to give his consent to the sale, or as to the effect of that consent so given and acquiesced in by all parties since 1874—ten years ago.

Exception 9 objects that the Circuit judge committed error in not holding that the statute of limitations could be interposed as a bar. Upon this subject the decision of the Circuit judge is so full and clear that we can add nothing to it. Section 380 of the revised code (1882) provides in such case as this as follows: "Upon such summons any party summoned may answer within the time specified therein, denying the judgment, or setting up any defence thereto, which may have arisen subsequently to such judgment, and in addition thereto, if the party be proceeded against according to section 377, he may make any defence which he might have made in the action if the summons had been served on him at the time when the same was originally commenced, and such defence had been then interposed to such action." If the defence of the statute "had been then interposed," it would not have been good, and under this section no greater effect can be given to it now, when it is a defence which has arisen since the judgment, and sufficient time has not elapsed to make it a good plea. We concur with the Circuit judge in his interpretation of this section of the code.

The last exception is: "Because the judgment rendered against the defendant is a nullity, inasmuch as it fails to specify any sum whatever to be inserted therein." A judgment is registration of what the court decides. In order to authorize an execution, its first requisite is that it must be final. Section 266 of our code defines a judgment to be "the final determination of the rights of

the parties in the action." And in reference to what is such a final determination, Mr. Freeman, at section 12 of his work on judgments, says: "Any judgment or decree, leaving some further act to be done by the court before the rights of the parties are determined, is interlocutory; but if it so completely fixes the rights of the parties that the court has nothing further to do in the action, then it is final." See *Ex parte Farrars*, 13 *S. C.*, 258. Taking this as the test, it seems to us that the decision of Judge Kershaw was a final judgment. It disposed of every issue in the case, directed judgment for the amount remaining unpaid upon the first judgment of H. F. Adickes against Allison & Bratton, and ordered execution to issue. Nothing else was left for the Court to do.

But it is suggested that, although the whole case was decided, the decision was not sufficiently definite, inasmuch as it failed to name the precise amount in dollars and cents. The objection really goes to the form rather than the substance. The decision did give judgment for a particular amount, to wit, the balance due on a record of the court, which in the summons was set out particularly. Nothing was lacking but a calculation of the interest, which was not necessary; but if so, being a mere clerical matter, it was referred to the officer of the court, whose duty it was to enter the formal judgment of the court. It is a proper case for the application of the maxim: *Id certum est quid certum reddi potest.*

We agree that there is no longer a provision of the code declaring that the decision of a referee upon the issues submitted "shall stand as the judgment of the court." But this was not a reference of issues, as to which confirmation was necessary. On the contrary, it was a mere incident to the enforcement of the judgment already rendered; somewhat like the taxation of costs, or a reference to the clerk in our old practice under the act of 1809, to ascertain the precise amount due after order for judgment by default upon a liquidated demand, which could be done by a mere inspection of the paper. In an action at law tried by the court, we do not understand that the decision is the formal judgment in the case under the seal of the court. It is required

to be filed and "judgment upon the decision shall be entered accordingly."

We do not think the decision of the Circuit judge was fatally defective for want of particularity in stating the amount adjudged to the plaintiff; but we think it was error to add the interest to the principal, and thus make the interest, at the time the absent partner, Bratton, was declared liable, an interest bearing amount. Section 377 of the code declares that the partner not served in the first instance, but summoned afterwards, "shall be bound by the (first) judgment in the same manner as if he had been originally summoned." As this is the first case which has reached us, under sections 377 and 378 of the code, we think it may be well to settle the practice; and in order to avoid the necessity of entering two judgments upon one joint cause of action, that the judgment against the partner not served in the first instance, should run somewhat in this form: The judgment herein of H. F. Adickes, having been recovered against the partnership of Allison & Bratton and also against James B. Allison, who alone was served with process, and the other partner, J. R. Bratton, now having been served and heard, it is adjudged, that the said Bratton be bound by the aforesaid judgment against the partnership of Allison & Bratton from this date; and it is further ordered that the plaintiff have leave to enter execution on said judgment against the said Bratton personally.

Taking the view that under the code the defendant Bratton was simply adjudged "to be bound by the first judgment against Allison & Bratton," there should have been no addition of interest to the amount due at the time of the second judgment. Bratton was liable, but the order for the execution to issue should have been for the balance of the first judgment, viz.: $511.58, with interest from April 3, 1877, until paid.

The judgment of this court is, that the judgment of the Circuit Court be so modified as to conform to the conclusions herein announced, and that in all other respects it be affirmed.