Carolyn JEWELL (Now
Muir), Appellant

v.

Rodger JEWELL, Appellee.

No. 2007–CA–000420–MR.

Court of Appeals of Kentucky.

May 23, 2008.

———

Lyn Taylor Long, Moulton & Long,
PLLC, Elizabethtown, KY, for appellant.

Barry Birdwhistell, Bland & Birdwhis-
tell, Elizabethtown, KY, for appellee.

Before: LAMBERT, MOORE, and
WINE, Judges.

## OPINION

LAMBERT, Judge.

Carolyn Jewell (now Muir) appeals from
a judgment entered in favor of her ex-
husband, Rodger Jewell, finding that he is
not liable for any portion of their son's
funeral expenses. For the reasons set
forth herein, we reverse.

Carolyn and Rodger were divorced in
December 1990. By agreement contained
in the decree, Carolyn was granted sole
custody of Justin, their only child, and
Rodger was given specific visitation rights.
The relationship between Carolyn and
Rodger was strained, and the relationship
between Rodger and Justin in turn deteri-
orated over the years.

Rodger's child support obligations were
modified several times over the years, but
the final order, entered in 2003, modified
child support to $513 a month, ordered
Rodger to provide medical insurance for
Justin, and made Rodger responsible for
75% of extraordinary medical expenses.
Moreover, the court instructed that Rodg-
er would be allowed to claim Justin as a
dependent in all odd-numbered tax years.
Rodger's visitation rights were affirmed,
and the parties were instructed to follow
local visitation rules.

Justin was diagnosed with cancer in Jan-
uary 2005. Carolyn notified Rodger of the
diagnosis, and Rodger went to the hospital
soon after to see Justin. Rodger, howev-
er, only visited Justin during his illness
that one time. The parties dispute the
reasons for this, but we find them irrele-
vant.

Carolyn was terminated from her job
during Justin's illness, having exhausted
all of her sick leave, vacation days, and her
Family Medical Leave time. Justin's ill-
ness placed a heavy financial burden on
Carolyn and her new husband. Friends
and family responded by holding a benefit
and establishing a fund called the "Just for
Justin Fund." In total they collected
$20,000 in donations.

At the time of Justin's death in January 2006, the fund only contained approximately $6,000. The funeral bill from Brown's Funeral Home was $7,288. The flowers for the casket were $222.60. Carolyn also purchased three burial plots for a total of $3,085, of which Justin's plot cost $1,028.33. The total funeral costs for Justin were $8,538.93.

Carolyn and her husband used the money in the fund to pay for half of the costs of the funeral expenses, but the remaining money in the fund was used for normal living expenses in light of their financial strain from Justin's prolonged illness. Rodger was not a party to any of the contracts regarding the funeral nor was he even permitted to attend the funeral, allegedly as a dying request by Justin.

Upon Justin's death, Rodger received $10,000 in proceeds from a death benefit policy he maintained on Justin through his employer. At the time this present action commenced, $5,000 remained from the proceeds in a savings account maintained by Rodger. The remainder he had used to pay bills.

On July 11, 2006, Carolyn motioned the Hardin Family Court, requesting a judgment for half of Justin's funeral expenses, burial expenses, and casket flower expense. At the hearing, Rodger acknowledged his responsibility to pay for half of the funeral expenses. The court, however, found that he did not have such a responsibility and overruled Carolyn's motion. This appeal followed.

Carolyn argues that the trial court erred in finding that Rodger was relieved of his financial obligation to pay his child's funeral expenses by virtue of her being awarded sole custody. She specifically contends that Kentucky Revised Statute (KRS) 406.011 and the doctrine of necessaries require Rodger to pay for a portion of Justin's funeral expenses. We agree.

This is undisputedly a matter of first impression in Kentucky. Appellate courts in several other states, however, have applied the doctrine of necessaries to obligate a parent to pay for the expenses incurred by his or her child, including medical and funeral expenses. *See In re Terrell,* 48 Ohio App.2d 352, 357 N.E.2d 1113 (1976); *Kaplon v. Harris,* 567 N.E.2d 1130 (Ind.1991); *Rose Funeral Home v. Julian,* 176 Tenn. 534, 144 S.W.2d 755 (1940); *Graul v. Adrian,* 32 Ill.2d 345, 205 N.E.2d 444 (1965).

Although the cases discussed above are admittedly not binding on this Court, we find their reasoning both legally sound and equitable. The trial court in the case at hand wrongfully relied on the fact that Carolyn was granted sole custody as the decisive factor of whether Rodger is liable for half of the funeral expenses. They compare the decision to have a funeral for a deceased child to deciding on where to send a child to school or where to take a child to church. We find this analysis flawed. Instead, non-religion-specific funeral expenses, as those in this case, are more analogous to costs related to pregnancy and birth of a child, which a father is required to contribute to pursuant to KRS 406.011.

KRS 406.011, entitled "Obligations of father, presumption of paternity," specifically states that:

[t]he father of a child which is or may be born out of wedlock *is liable to the same extent as the father of a child born in wedlock,* whether or not the child is born alive, for the *reasonable expense* of the mother's pregnancy and confinement and for the education, necessary support and *funeral expenses of the child.* A child born during lawful wedlock, or within ten (10) months thereafter, is pre-

sumed to be the child of the husband and wife.

(Emphasis added.) It would be counterintuitive for this Court to hold a father who was never married to the mother liable for the reasonable expenses as related to his child's funeral but not to hold a father who was married to the mother liable for the same. This is exactly what Rodger asks us to do here.

We further turn to KRS 403.211(2), which states:

[a]t the time of initial establishment of a child support order, whether temporary or permanent, *or in any proceeding to modify a support order,* the child support guidelines in KRS 403.212 shall serve as a rebuttable presumption for the establishment or modification of the amount of child support. Courts may deviate from the guidelines *where their application would be unjust or inappropriate.*

(Emphasis added.) We view this action as a proceeding to modify or interpret the support order, in light of the fact that it did not explicitly provide for funeral expenses but Carolyn is seeking them under that order. As stated above, a court may deviate from the explicit child support guidelines where the result "would be unjust or inappropriate." We cannot think of a more unjust and inappropriate result than to allow Rodger to collect $10,000 on a death benefits policy for Justin but not to order him to use that to pay for half, $4,269.47, of the funeral expenses.

In light of the totality of the circumstances and in reviewing the above decisions, we find that the trial court erred in finding that there was no legal justification for ordering Rodger to pay for half of the funeral expenses. Instead, we find that not only would it violate the long-standing policy imposing a duty on parents to support their children, but it also would offend our sense of justice and equity to allow Rodger not to pay for half of his son's funeral expenses. Therefore, we reverse and remand the judgment of the Hardin Circuit Court for proceedings consistent with this opinion.

ALL CONCUR.