586 S.E.2d 141

Lyle NEELY and Gloria Russel Ballard, as
Personal Representative of the estate
of Rita Russell, Respondents,

v.

Nancy THOMASSON, individually and as Personal Representa-
tive of the Estate of John Thomas Neely, and Josephine Mor-
gan Wells, of whom, Nancy Thomasson, individually and as
Personal Representative of the Estate of John Thomas Neely is,
Appellant.

No. 3661.

Court of Appeals of South Carolina.

Heard April 10, 2003.
Decided July 14, 2003.
Rehearing Denied Sept. 24, 2003.

Carolyn W. Rogers, of Rock Hill, for Respondents.

S. Jackson Kimball, III, of Rock Hill, for Appellant.

STROM, Acting Judge:

Nancy Thomasson appeals the circuit court's affirmance of the probate court's order, which determined Thomasson was not a child of John Thomas Neely, and therefore, not an heir of his estate. We vacate in part and reverse and remand in part.

## FACTS/PROCEDURAL HISTORY

Thomasson was born on December 1, 1943. Her birth certificate lists her name as Nancy Jane Neely and her parents as John Thomas Neely and Josephine Morgan. Thomasson's parents, unmarried at the time of her birth, married seven months later. They separated approximately six months after their marriage, but did not immediately seek a divorce.

In 1963, Morgan brought an action, seeking a divorce from Neely. She alleged one child was born to her and Neely. Neely never answered Morgan's Complaint and was held in default. The matter was referred to a special master, who was to conduct a hearing, take evidence, and issue a report to

the circuit court, which would then enter a final order. Pursuant to the order of reference, the special referee issued a report in which he stated the evidence adduced during the hearing proved one child was born to the parties and the child was emancipated at the time of the hearing. This finding was incorporated by the circuit court in its final order granting Morgan a divorce. Neither party appealed this final decree.

In 1998, Neely died intestate. Subsequently, Thomasson asserted a claim in probate court, alleging she was Neely's daughter, and therefore, an heir to his estate. Thomasson was appointed as the estate's personal representative. Thereafter, Neely's brother and sister, Lyle Neely and Rita Russell (collectively, "Neely's Siblings"), commenced this action, alleging Thomasson was not Neely's child and seeking judicial determination of Neely's heirs.[1]

During the contested proceeding, the probate court admitted blood-type evidence, indicating Thomasson had a blood type that could not have been produced from the blood types of Neely and Morgan. Additionally, the probate court admitted DNA evidence, showing a 0.00% probability Thomasson was Neely's daughter.

Following the hearing, the probate court found Thomasson was neither Neely's natural nor adopted child and no adjudication of paternity occurred prior to Neely's death. Thus, the probate court ruled Thomasson was not Neely's heir for purposes of intestate succession. Thomasson appealed the probate court's order to the circuit court, which affirmed the order. Thomasson appeals.

## LAW/ANALYSIS

### I. Subject Matter Jurisdiction

■ For the first time, Thomasson argues the probate court lacked subject matter jurisdiction to adjudicate the issue of paternity. Therefore, Thomasson argues this Court should vacate the probate court's entire order. We agree the probate

---

1. During the course of these proceedings, Rita Russell died, but her estate's personal representative has continued in the same posture on her behalf. Thus, the parties to the action remain the same and this change does not affect the outcome of the case.

court did not have subject matter jurisdiction to adjudicate the issue of paternity. However, we do not agree this Court must vacate the entire order.

Initially we note, our rules of error preservation do not bar Thomasson's argument because she asserts a defect in the probate court's subject matter jurisdiction. *See Tatnall v. Gardner,* 350 S.C. 135, 137, 564 S.E.2d 377, 378 (Ct.App.2002) ("The issue of subject matter jurisdiction may be raised at any time including when raised for the first time on appeal to this Court.").

Our Court recently decided an almost identical case in *Simmons v. Bellamy,* 349 S.C. 473, 562 S.E.2d 687 (Ct.App. 2002) (per curiam). We find *Simmons* controlling in the current situation. In *Simmons,* the probate court, relying on its jurisdiction to determine heirs during an intestacy proceeding, issued an order in which it determined an infant born after the decedent's death was the child of the decedent, and thus, his heir. 349 S.C. at 475, 562 S.E.2d at 688. The circuit court affirmed the probate court's order in its entirety. *Id.* This Court *sua sponte* raised the issue of whether the probate court had subject matter jurisdiction to adjudicate paternity and held it did not. *Id.* at 476–77, 562 S.E.2d at 689.

When rendering its decision, the *Simmons* court considered the jurisdiction of both the family court and the probate court. This Court specifically considered whether the probate court could adjudicate paternity as part of its inherent jurisdiction to determine heirs during an intestacy proceeding. However, after reviewing the applicable statutory authority, specifically South Carolina Code Annotated section 20–7–420 (1976) (stating "[t]he family court shall have exclusive jurisdiction: ... (7) To hear and determine actions to determine the paternity of an individual"), this Court unequivocally found the family court is vested with exclusive subject matter jurisdiction to adjudicate matters of paternity even when the question of a decedent's heirs is properly pending before the probate court. *Simmons,* 349 S.C. at 476–77, 562 S.E.2d at 689.

We find both the reasoning and result reached in *Simmons* to be compelling. The probate court's jurisdiction extends to all matters "related to ... [the] determination of heirs" "except as otherwise specifically provided." S.C.Code Ann. § 62–

1–302(a) (Supp.2002). However, section 20–7–420(7) of the Children's Code reserves to the family court exclusive jurisdiction for the adjudication of paternity. Therefore, we find the probate court's jurisdiction is limited by section 20–7–420(7). Moreover, section 20–7–420(7) expressly provides the family court is to adjudicate paternity in intestacy cases that have already been or will be commenced in probate court. *See* S.C.Code Ann. § 20–7–420(7) (stating "[t]he [paternity] action may be brought . . ., if the father is deceased, in the county in which proceedings for probate of his estate have been or could be commenced").

■ Thus, having reviewed the applicable statutory authority and relevant case law, we see no reason for this Court to depart from our decision in *Simmons*. However, although we agree with Thomasson's contention that the probate court lacked subject matter jurisdiction to determine her paternity, we do not agree we must vacate the probate court's *entire* order. As noted above, the probate court has jurisdiction to determine heirs in an intestacy proceeding. *See* S.C.Code Ann. § 62–1–302(a)(i). Thus, we find it necessary to vacate only that portion of the probate court's order in which it purported to adjudicate Thomasson's paternity.

## II.  Prior Adjudication of Paternity

■ Having determined the probate court lacked subject matter jurisdiction to adjudicate Thomasson's paternity, we must next decide whether the court erred in finding the Neely–Morgan divorce decree was not a final adjudication of Thomasson's paternity.

■ In relevant part, South Carolina Code Annotated section 62–2–109 (Supp.2002) states "[i]f . . . a relationship of parent and child must be established to determine succession . . . (2)(ii) the paternity is established by an adjudication commenced before the death of the father." Thus, we must determine whether the Neely–Morgan divorce decree, clearly issued prior to Neely's death, was a final adjudication of Thomasson's paternity.

"Any judgment or decree, leaving some further act to be done by the court before the rights of the parties are determined [is not final]; *but if it so completely fixes the*

*rights of the parties that the court has nothing further to do in the action, then it is final."*

*Adickes v. Allison & Bratton,* 21 S.C. 245, 259 (1884) (alteration and emphasis added) (quoting Freeman *Judgments* § 12), *cited with approval in Mid–State Distribs., Inc. v. Century Importers, Inc.,* 310 S.C. 330, 335, 426 S.E.2d 777, 780 (1993). A decree of divorce is generally a final judgment of the court. *Culbertson v. Clemens,* 322 S.C. 20, 23, 471 S.E.2d 163, 164 (1996); *cf. Corbin v. Kohler Co.,* 351 S.C. 613, 621, 571 S.E.2d 92, 97 (Ct.App.2002) ("The final written order contains the binding instructions which are to be followed by the parties.").

Forty years ago, Morgan brought an action against Neely. Morgan sought a divorce and asserted Thomasson was the parties' only child. Neely never answered Morgan's Complaint and was held in default. The matter was referred to a special master, who conducted a hearing, took evidence, and issued a report to the circuit court. In the special referee's report, he stated the evidence adduced during the hearing proved one child was born to the parties and the child was emancipated at the time of the hearing. This finding was incorporated by the circuit court in its final order granting Morgan a divorce. Neither party appealed.

Having reviewed the record, including the original documents involved in the Neely–Morgan divorce action, we find the probate court erred in concluding the divorce decree was not a final adjudication of Thomasson's paternity. Morgan alleged Thomasson was Neely's child and Neely did not respond. Neely had the opportunity to contest Thomasson's paternity at the hearing and did not do so. This Court need not speculate why Neely did not contest Thomasson's paternity during the divorce proceedings, but rather must only confirm Neely was given the opportunity to do so. *Cf. Sub–Zero Freezer Co. v. R.J. Clarkson Co.,* 308 S.C. 188, 191, 417 S.E.2d 569, 571 (1992) (indicating by analogy, "claims [that] were either litigat[ed] in the prior actions or could have been so litigated" may not be relitigated in a subsequent action).

In this case, the court's order, granting Morgan a divorce and finding the parties had one child, clearly "disposed of every issue in the case, directed judgment" and contained binding instructions for the parties. *See Adickes,* 21 S.C. at

259; *Corbin,* 351 S.C. at 621, 571 S.E.2d at 97. Because Neely never appealed the final decree it is the law of the case and cannot now be challenged or ignored. *See ML–Lee Acquisition Fund, L.P. v. Deloitte & Touche,* 327 S.C. 238, 241, 489 S.E.2d 470, 472 (1997) (holding an unappealed ruling is the law of the case and cannot be later challenged). Thus, we find the divorce decree was a final adjudication of Thomasson's paternity prior to Nelly's death as contemplated by section 62–2–109(2)(ii).

We believe our holding supports the important public policy interest of upholding the finality of judgments rendered by the courts of this State, particularly when those judgments involve issues relating to children. *Cf. Chewning v. Ford Motor Co.,* 354 S.C. 72, 86 579 S.E.2d 605, 613 (stating South Carolina courts have long "recognize[d] that important benefits are achieved by the preservation of final judgments"). Were we to hold otherwise, we would be permitting Neely's Siblings to assert challenges to Thomasson's paternity that Neely chose not to assert.

Thus, because we find the divorce decree was a final adjudication of Thomasson's paternity, we find the probate court erred further in its determination of Neely's heirs. Therefore, based on our holding that Thomasson is Neely's child for purposes of intestacy proceedings, we remand the case for the probate court to redetermine the heirs of Neely's estate and redistribute his estate in accordance with this opinion.

## CONCLUSION [2]

Because the probate court did not have subject matter jurisdiction to adjudicate Thomasson's paternity and erred in deciding the Neely–Morgan divorce decree was not a final adjudication of Thomasson's paternity, the probate court's order is

**VACATED IN PART and REVERSED AND REMANDED IN PART.**

---

**2.** Because of our holdings with respect to the probate court's lack of subject matter jurisdiction and error in determining the Neely–Morgan divorce decree was not a prior adjudication of paternity, we need not reach Thomasson's other issues on appeal.

HOWARD, J., concurs.

STILWELL, J., concurs in part and dissents in part in a separate opinion.

STILWELL, J., (concurring in part and dissenting in part):

I agree fully with the majority's discussion and conclusion regarding Issue I, the subject matter jurisdiction of the probate court to determine paternity. However, I disagree with the majority's view on Issue II and respectfully dissent therefrom.

Although neither res judicata nor claim or issue preclusion is strictly involved here because of the intervention of the statute, much of the same analysis that would be required under those doctrines should be utilized here. *See generally Crestwood Golf Club, Inc. v. Potter,* 328 S.C. 201, 216–17, 493 S.E.2d 826, 834–35 (1997). There is, however, one significant difference. The statute requires an adjudication of paternity, not merely an opportunity for an adjudication. In the final analysis, I do not believe the divorce decree constituted an adjudication of paternity within the contemplation of the statute.

A review of the divorce proceeding is revealing. The action was commenced by a complaint containing six brief factual paragraphs together with two even more brief paragraphs setting forth the relief requested. The only factual paragraph related to paternity alleged that to the union one child, Nancy Jane Neely Wells, was born "who is now married and no longer dependent on the plaintiff for support." No relief was requested of the court relating to this child, the prayer being limited to a divorce and "any other and further relief as to the court may seem just and proper." The defendant, John Thomas Neely, defaulted. A reference was held before a special referee. In the minutes of the reference, one question was asked about the child, as follows:

Q: I believe there was one child born to this union and that child is now grown and married?

A: Yes, sir.

That is the sum and substance of the testimony as to paternity. The referee then issued his report, which contains only

one sentence related to the child: "The evidence further showed that the parties to this action are the parents of one child, who is now grown and married, and that since this child is now married, there is no question of custody or support." None of the findings and recommendations by the special referee relate to the child or the question of paternity. There followed a perfunctory decree of the court adopting in full the recommendations of the special referee and awarding the plaintiff a divorce, without even mentioning the existence of a child.

Under these circumstances, it is clear that this action established only that the parties were entitled to a divorce from one another. However, the issue of the paternity of the child was not necessary to that conclusion. Paternity was never actually litigated, nor did it have to be.

I would, therefore, affirm the probate court on this issue.