618 S.E.2d 884

Lyle NEELY and Gloria Russell Ballard, as
Personal Representatives of the Estate
of Rita Russell, Petitioners,

v.

Nancy THOMASSON, individually, and as Personal Representa-
tive of the Estate of John Thomas Neely, and Josephine Mor-
gan Wells, of whom Nancy Thomasson, individually and as
Personal Representative of the Estate of John Thomas Neely, is
Respondent.

No. 26024.

Supreme Court of South Carolina.

Heard March 1, 2005.
Decided Aug. 15, 2005.

Carolyn W. Rogers, of Harper and Rogers, of Rock Hill, for Petitioners.

Lucy London McDow, of Rock Hill, for Respondent.

Chief Justice TOAL:

This case involves a probate matter. The probate court ruled that Nancy Thomasson (Nancy) was not the child of John Thomas Neely (Decedent) and therefore could not inherit from his estate. Nancy appealed and the circuit court affirmed. Nancy appealed once again, and the court of appeals held that (1) the probate court did not have subject matter jurisdiction to determine paternity, and (2) the divorce decree between Decedent and Josephine Morgan Wells (Mother) constituted a prior, final adjudication of paternity. *Neely v. Thomasson*, 355 S.C. 521, 586 S.E.2d 141 (Ct.App.2003). We granted certiorari to review the court of appeals' decision. We affirm in part and reverse in part.

## FACTUAL/PROCEDURAL BACKGROUND

John Thomas Neely (Decedent) and Josephine Morgan (Mother) married on July 22, 1944. Approximately seven months before the couple married, Mother gave birth to a baby girl, Nancy. The birth certificate listed Decedent as the father, and the child was given Decedent's last name.

Two-and-a-half years after marrying, the couple separated. The separation agreement states that the couple has "one child, Nancy Jane Neely, a girl," and that Decedent "shall have the right and privilege to see and visit with his infant daughter at any reasonable time or place." The agreement also released Decedent of all obligations to support Mother or Nancy.

Thereafter, the couple lived apart, but did not obtain a divorce until approximately seventeen years later, when Mother filed for divorce on the ground of desertion. In the complaint, Mother alleged the following:

> That there was born to the union of this marriage one child, [Nancy], who is now married and no longer dependent on [Mother] for support.

Decedent never answered the complaint and was found in default.

The divorce matter was referred to a special referee who conducted a hearing in which Mother testified as follows:

Q. When were you and [Decedent] married?

A. July 22, 1944

Q. Where were you married?

A. York, South Carolina.

Q. I believe there was one child born to this union, and that child is now grown and married?

A. Yes, sir.

Based on this testimony, the special referee made the following finding:

> The evidence further showed that the parties to this action are the parents of one child, who is now grown and married, and that since this child is now married, there is no question of custody or support.

These findings were incorporated into the divorce decree. Decedent never contested these findings or appealed.

On July 21, 1998, Decedent died intestate and unmarried. At the hearing to appoint a personal representative, the probate court received two competing petitions for appointment: one from Decedent's siblings, and one from Nancy, alleging that she was Decedent's daughter. After considering the evidence presented, the probate court found that Nancy was Decedent's daughter and, accordingly, appointed her as personal representative of the estate.

Thereafter, Decedent's siblings petitioned the court for a determination of heirs, alleging that Nancy was not Decedent's daughter. Following the submission of DNA and blood-type evidence, the probate judge ruled that Nancy was not Decedent's child, and therefore not an heir. In addition, the judge found that the divorce proceeding between Decedent and Mother did not constitute a prior adjudication of paternity. As a result, the judge ruled that Nancy was not Decedent's child for purposes of intestacy.

Nancy appealed and the circuit court affirmed. Nancy appealed once again, and the court of appeals vacated in part and reversed and remanded in part. The court of appeals held that the probate court did not have jurisdiction to determine paternity. In addition, the court held that the divorce decree represented a prior adjudication of paternity, and therefore, Nancy was the Decedent's child for purposes of intestacy proceedings. *Neely v. Thomasson*, 355 S.C. 521, 586 S.E.2d 141 (Ct.App.2003).

This Court granted Decedent's siblings' petition for certiorari. The following issues have been raised for review:

I. Did the court of appeals err in finding that the probate court lacked subject matter jurisdiction to determine paternity?

II. Did the court of appeals err in finding that the divorce decree constituted a prior, final adjudication of paternity?

### Law/Analysis

### Standard of Review

When a probate court proceeding is an action at law, the circuit court and the appellate court may not disturb the

probate court's findings of fact unless a review of the record discloses there is no evidence to support them. *Matter of Howard,* 315 S.C. 356, 361, 434 S.E.2d 254, 257 (1993). Questions of law, however, may be decided with no particular deference to the lower court. *Moriarty v. Garden Sanctuary Church of God,* 341 S.C. 320, 327, 534 S.E.2d 672, 675 (2000).

## I. Subject Matter Jurisdiction

█ Decedent's siblings contend that the court of appeals erred in holding that the probate court lacked subject matter jurisdiction to determine paternity. We agree.

This issue involves two seemingly conflicting statutes. The first statute, found in the Probate Code, provides as follows:

(a) To the full extent permitted by the Constitution, and except as otherwise specifically provided hereinafter, *the court has exclusive original jurisdiction* over all subject matter related to:

(1) estates of decedents, including the contest of wills, construction of wills, and *determination of heirs* and successors of decedents and estates of protected persons. . . .

S.C.Code Ann. § 62–1–302 (1987) (emphases added). "Heirs" is defined as "those persons . . . who are entitled under the statute of intestate succession to the property of a decedent." S.C.Code Ann. § 62–1–201(17) (1987).

The second statute, found in the Children's Code and entitled "Jurisdiction of family court in domestic matters," provides as follows:

The *family court* shall have *exclusive jurisdiction:* . . .

(7) *To hear and determine actions to determine the paternity of an individual.*

S.C.Code Ann. § 20–7–420(7) (1985) (emphases added).

█ The court of appeals recently held that because section 20–7–420(7) states that family courts have exclusive jurisdiction to hear and determine paternity, probate courts lack subject matter jurisdiction to make such determinations. *Simmons v. Bellamy,* 349 S.C. 473, 476, 562 S.E.2d 687, 689 (Ct.App.2002). Applying the rule from *Simmons,* the court of appeals in the present case held that the probate court did not

have jurisdiction to determine whether Nancy was Decedent's biological daughter. As in *Simmons*, the court found that under section 20–7–420(7), family courts have exclusive jurisdiction to determine paternity.

We disagree and hold that the court of appeals erred in finding that the probate court lacked subject matter jurisdiction to decide paternity for the purpose of determining heirs. The probate court has "exclusive original jurisdiction over all subject matter related to ... [the] determination of heirs." S.C.Code Ann. § 62–1–302. A determination of heirs may require the probate court to determine consanguineous relationships, including paternity. Provisions throughout the Probate Code anticipate such determinations. *See, e.g.,* S.C.Code Ann. § 62–2–107 (1987) (providing that "[r]elatives of the half blood inherit the same share they would inherit if they were of whole blood...."); S.C.Code Ann. § 62–1–201(21) (1987) (defining "issue" as "lineal descendants whether natural or adoptive"). Moreover, as a matter of judicial economy, the probate court should have the power to make decisions necessary to the administration of an estate. Therefore, we hold that probate courts have the authority to determine paternity for the purpose of determining heirs. *Cf. Brown v. Ryder Truck Rental,* 300 S.C. 530, 533, 389 S.E.2d 161, 163 (Ct.App.1989) (holding that the Workers' Compensation Commission has subject matter jurisdiction to determine paternity for the purpose of determining dependency).[1]

Accordingly, the portion of the court of appeals' decision finding that probate courts lack jurisdiction to determine paternity is reversed. Moreover, the court of appeals' decision in *Simmons v. Bellamy,* 349 S.C. 473, 562 S.E.2d 687 (Ct.App.2002), is overruled.

---

1. We note that the General Assembly recently passed legislation giving family and probate courts concurrent jurisdiction to determine paternity. The Probate Code has been amended to read: "The court's jurisdiction to hear and determine paternity matters and validity of marriages of decedents is concurrent with that of the family court...." S.C.Code Ann. § 62–1–302(c) (2005). And the Children's Code now reads: "The family court and the probate court of each county have concurrent jurisdiction to hear and determine matters concerning the validity of marriages of decedents and paternity of an individual." S.C.Code Ann. § 20–7–420(B) (2005). Our decision today, however, is based not on these amendments, but on the reasoning set forth in this opinion.

## II. Paternity Adjudication

■ Decedent's siblings contend that the court of appeals erred in finding that the divorce decree constituted a prior, final adjudication of paternity. We disagree.

■ A person born out of wedlock may inherit from a father who dies intestate if it is determined, "in an adjudication commenced before the death of the father," that the person is the father's child. S.C.Code Ann. § 62-2-109(2) (1986). A family court proceeding in which child custody, support, and visitation rights are determined may constitute an adjudication of paternity. *Eichman v. Eichman*, 285 S.C. 378, 380, 329 S.E.2d 764, 766 (1985). Paternity may also be adjudicated in a divorce proceeding. *Beyer v. Metze*, 326 S.C. 356, 359, 482 S.E.2d 789, 791 (Ct.App.1997).

■ If the issue of paternity was raised, or could have been raised, in a prior action, a party to that action is barred from challenging paternity at a later date. *Eichman*, 285 S.C. at 380, 329 S.E.2d at 766; *but cf. Palm v. Gen. Painting Co., Inc.*, 302 S.C. 372, 373, 396 S.E.2d 361, 361 (1990) (noting that a child is not bound by paternity determinations made in a prior divorce action). Heirs are barred from asserting claims that their ancestor would have been barred from asserting during his lifetime. *Watson v. Watson*, 172 S.C. 362, 370–71, 174 S.E. 33, 36 (1934); *cf. Thompson v. Hudgens*, 161 S.C. 450, 463, 159 S.E. 807, 812 (1931) (explaining that heirs are generally in privity with their ancestor).

In *Eichman v. Eichman*, husband and wife were married several months after the birth of the child. 285 S.C. at 379, 329 S.E.2d at 765. A few years later, the couple separated, and husband filed an action in family court for a determination of custody, support, and visitation rights. The resulting order provided:

I also find that a healthy child has been born of the marriage, namely [child's name], and that [husband] is a healthy and intelligent father and is capable of earning a sufficient income to support himself and the minor child of the parties. . . .

In addition, the order granted custody to mother, provided that husband would pay $200 per month in child support, and outlined husband's visitation rights. *Id.*

Later, the couple filed for divorce, and husband contended that he was not the child's father. Accordingly, he asked the family court to order the necessary paternity tests. The court denied husband's request, and this Court affirmed, stating "There can be no question but that these same parties were previously before the court relative to the same subject matter and that *an adjudication was made*." *Id.* at 380, 329 S.E.2d at 766 (emphasis added). Accordingly, husband was barred from raising the paternity issue in a later action. *Id.*

Similarly, in *Beyer v. Metze,* the divorce decree stated that three children—two who had wife's last name and one who had husband's last name—were born during the marriage. 326 S.C. at 358, 482 S.E.2d at 790. Wife was granted custody and husband was ordered to pay support in the amount of $25 per week for each child, totaling $75 per week. Husband did not challenge or appeal the decree. Approximately thirteen years later, DSS filed a petition to collect support, totaling $48,675. *Id.* at 358, 482 S.E.2d at 791. Husband contended that two of the children were not his and asked the court to order blood tests. In response, DSS contended that paternity had been adjudicated during the divorce proceeding and therefore husband was estopped from challenging paternity in a later action.

The court of appeals agreed and held that "[t]he wording [in the decree], read in conjunction with the provisions allowing [husband] visitation of the children and requiring him to pay support for them, *clearly implies paternity.*" *Id.* at 359, 482 S.E.2d at 791 (emphasis added). Accordingly, the court held that because paternity "had previously been determined in an order which was neither challenged nor appealed," the family court properly denied husband's request to order blood tests. *Id.*

In the present case, Decedent and Mother married several months after Nancy was born. On Nancy's birth certificate, Decedent is listed as the father, and Nancy was given his last name. When the couple separated, Decedent signed an agreement acknowledging that he was Nancy's father. The agree-

ment gave Decedent "the right and privilege to see and visit with his infant daughter at any reasonable time or place."

Several years later, when the couple divorced, the complaint alleged that "there was born to the union of this marriage one child." According to the affidavit and proof of service contained in the record, Decedent was personally served with the divorce complaint. After the time expired for Decedent to answer the complaint or otherwise plead, Wife's attorney filed an affidavit of default.

A hearing was conducted before a special referee. Decedent did not appear at the hearing. The special referee found that Decedent and Mother were "the parents of one child, who is now grown and married." The special referee also found that, because the child is married, "there is no question of custody or support." These findings were adopted by the circuit court judge who issued the final divorce decree. Decedent did not appeal.

Because the court found that one child was born during the marriage, and that Decedent was the parent of that child, we find that the issue of paternity was adjudicated in the divorce proceeding. The fact that the order did not outline specific provisions regarding custody and support, like the orders in *Eichman* and *Beyer*, does not undermine our finding. As the special referee explained, there was no need to outline such provisions because the child was grown and married. Moreover, Decedent and Mother had resolved custody and support issues in the separation agreement signed years ago. Therefore, we hold that the divorce proceedings constituted a prior adjudication of paternity.

 Because the issue of paternity was raised and ruled upon in a prior action, Decedent, if alive, would have been barred from challenging paternity at a later date. *See Eichman*, 285 S.C. at 380, 329 S.E.2d at 766. As a result, Decedent's heirs are likewise barred from asserting claims that Decedent himself would have been barred from asserting. *See Watson*, 172 S.C. at 370–71, 174 S.E. at 36. Moreover, we find that it would be unjust to allow Decedent's siblings to assert a claim that Decedent himself never chose to assert during his lifetime. In fact, there is no evidence in the record that Decedent took any steps whatsoever during his lifetime to disclaim Nancy as his daughter. To the contrary, Decedent

acknowledged, on more than one occasion, that Nancy was his child. Therefore, we hold that Decedent's siblings should not have been permitted to challenge the prior paternity determination.

Accordingly, the court of appeals' decision finding that the divorce decree constituted a prior, final adjudication of paternity is affirmed. As a result, Nancy is Decedent's child for purposes of intestacy proceedings.

### CONCLUSION

We hold that the court of appeals erred in finding that the probate court lacked jurisdiction to determine paternity for the purpose of determining heirs. Nonetheless, because a prior adjudication of paternity had been made, the probate court erred in allowing Decedent's siblings to challenge paternity during the administration of the estate. For this reason, we affirm the court of appeals' decision finding that the divorce action constituted a prior, final adjudication of paternity. Therefore, the court of appeals' decision is affirmed in part and reversed in part.

**AFFIRMED IN PART; REVERSED IN PART.**

MOORE, WALLER, and BURNETT, JJ., concur.
PLEICONES, J., concurring in result only.