713 S.E.2d 643

In the Matter of the ESTATE OF Charles
Galen RIDER, a/k/a C.G. Rider.

**Carolyn S. Rider, Appellant,**

v.

**Estate of Charles Galen Rider, Thomas M. Grady,
Personal Representative, Respondent,**

and

**Deborah Rider McClure, Ginger C. Rider, Christian James
McClure, and Austin Patrick McClure, Respondents.**

No. 4842.

Court of Appeals of South Carolina.

Heard May 5, 2011.
Decided June 15, 2011.
Rehearing Denied July 26, 2011.

Laurel Blair, of Greenville and Terry A. Finger, of Hilton Head Island, for Appellant.

Daphne A. Burns, Stephen Edward Carter and Douglas Whitsett MacNeille, all of Hilton Head Island, for Respondents.

THOMAS, J.

In this probate action, Carolyn S. Rider (Wife) appeals a probate court order that held $304,082.46 of mutual fund shares were part of the estate of her husband, Charles G. Rider (Decedent). Wife argues the probate court erred in reasoning the shares were not transferred to her as a gift prior to Decedent's death because (1) Decedent entered an agency agreement with his agent, Wachovia Bank (Wachovia),

that provided "prior actions" of Decedent and Wachovia were not affected by Decedent's death; (2) Decedent issued an entitlement order regarding the shares before his death that made the transfer of the shares deemed completed upon the date the entitlement order was made; and (3) Decedent's transfer of the shares need only be effectuated by him so far as he could make it so. We affirm.

## FACTS

In 1993, Decedent entered into an "Investment Agency Agreement" (the Agreement) with a predecessor bank of Wachovia. The Agreement authorized Wachovia to open an account for Decedent in which to hold cash, securities, and other property, subject to Decedent's instructions. The Agreement further gave Wachovia discretionary power to buy, sell, and exercise certain rights regarding those securities, and it specified when and how the Agreement would terminate:

13. This Agreement may be terminated by either party by giving thirty (30) days' notice in writing to the other party or by [Decedent's] death, provided that termination by reason of [Decedent's] death shall be effective only upon receipt of actual knowledge thereof by one of your responsible officials and shall not affect the validity of any prior actions. Your authority hereunder shall not terminate in the event of [Decedent's] disability.

On June 8, 2005, Decedent called his wealth manager at Wachovia, Lynn DiLella (the Wealth Manager), and told her he wanted to transfer $2,000,000 worth of securities to Wife to ensure she could maintain her standard of living between his death and the end of probate.[1] Pursuant to the call, the Wealth Manager created a list of assets to transfer and emailed the list to Wachovia's trust department. The trust department prepared a letter with an approval page to be signed by Decedent, and it mailed the list and letter to Decedent. The letter directed the trust department to transfer the securities "to a new agency account to be opened for" Wife. On June 17, 2005, Decedent executed and returned the letter to the trust department.

---

1. Decedent learned he had terminal cancer some time prior to the call.

Between June and October 2005, four transfers were made pursuant to the letter. On June 22, a transfer of stock valued at $733,228 was settled and reflected on Wife's new account at Wachovia. On Friday, July 8, a transfer of stock valued at $39,672 was settled and reflected on Wife's account, and on the same day, Decedent died. Wachovia received actual knowledge of Decedent's death sometime late on either Friday, July 8 or Sunday, July 10.

On July 11, a transfer of mutual fund shares valued at $935,032.64 was settled and reflected on Wife's account, and on October 20, a transfer of mutual fund shares valued at $304,082.46 was settled and reflected on Wife's account.[2]

The personal representative of Decedent's estate filed this petition for declaratory judgment in probate court, naming Wife and ten others as respondents to the petition. Excluding Wife, four of the respondents named in the petition are respondents in this appeal (Respondents).

In the petition, the personal representative sought a determination of whether Decedent's execution of the letter completed the transfer of all the securities such that they are not part of Decedent's estate. Wife filed a Notice of Appearance and an Answer, alleging all of the securities transferred pursuant to Decedent's letter are not part of Decedent's estate under the Agreement and Article 8 of the South Carolina Uniform Commercial Code (Article 8). Respondents appeared and answered as well, arguing agency rules rather than Article 8 govern whether the securities are part of the estate.

At the probate hearing, Wachovia's trust officer (the Trust Officer), testified he began working for the trust department in August 2005, after Decedent's death. He stated he replaced the trust officer who handled the first three transfers, and he explained the procedure for executing transfers of the type Decedent requested: The trust department receives an instruction to make the transfer and then completes a form, which is sent to Wachovia's "back office." The back office next gives instructions to various departments depending upon the type of securities being transferred. For mutual funds, the Trust Officer testified transfers can take "from ten days to

---

2. The aggregate value of securities transferred, $2,012,115, includes appreciation between the instruction and the transfers.

a few weeks. Maybe longer." He conceded it was unusual for settlement of the final transfer to Wife to take as long as it did.

Even though the third and fourth transfers were not settled and reflected on Wife's account until after Decedent's death, the Wealth Manager testified she believed the trust department instructed the appropriate departments to complete all of the transfers before the death occurred.

The probate court held the transfers initiated by Decedent were intended to be *inter vivos* gifts and Article 8 applied to those transfers. Specifically, the probate court reasoned that Wachovia was an Article 8 "securities intermediary" and Decedent held "security entitlements" in the securities as an "entitlement holder" such that his letter constituted an "entitlement order." However, the probate court held that, pursuant to the Agreement and law of agency, Wachovia's authority to execute the entitlement order terminated when Wachovia received knowledge of Decedent's death. The court reasoned that although Decedent's entitlement order was "effective" under Article 8 when made by Decedent, the transfer was not complete until Wachovia "carried out" the entitlement order. The probate court explained that Wachovia's authority to carry out the transfers terminated before the transfer occurred because Article 8 did not supplant the law of agency. Consequently, the probate court found the first three transfers were completed before Wachovia learned of Decedent's death and, therefore, the related securities are not part of his estate. However, the probate court found the final transfer was not completed until after Wachovia learned of Decedent's death; therefore, the probate court found those securities are part of the estate.

Wife appealed to the circuit court. She argued the probate court erred in holding the final transfer was part of Decedent's estate because the entitlement order completed the transfer of the mutual funds on the day it was made. In response, Respondents argued to affirm the probate court's decision because it was supported by the evidence. Respondents did not cross-appeal the probate court's holding as to the third transfer, and they conceded to the circuit court that the only issue remaining was whether the fourth transfer was

part of the estate. The circuit court affirmed, and this appeal followed.

## ISSUES ON APPEAL[3]

I. Is the fourth transfer complete pursuant to the Agreement?

II. Does Article 8 displace agency law such that all of the transfers are deemed completed before Decedent's death?

III. Were the transfers completed "so far as Decedent could do so"?

## STANDARD OF REVIEW

The standard of review for actions in the probate court depends upon whether the underlying cause of action is at law or in equity. *Univ. of S. Cal. v. Moran*, 365 S.C. 270, 274, 617 S.E.2d 135, 137 (Ct.App.2005) (citation omitted). "[Q]uestions of law ... may be decided with no particular deference to the lower court." *Neely v. Thomasson*, 365 S.C. 345, 350, 618 S.E.2d 884, 886 (2005) (citation omitted). However, in actions at law, "the circuit court and the appellate court may not disturb the probate court's findings of fact unless a review of the record discloses there is no evidence to support them." *Id.* at 349–50, 618 S.E.2d at 886 (citation omitted). Therefore, this court reviews the interpretation of the Agreement and Article 8 without deference, but the probate court's findings as to whether the transfers were completed before the agency relationship was terminated must be upheld if supported by evidence. *See Auto Owners Ins. Co. v. Rollison*, 378 S.C. 600, 606–07, 663 S.E.2d 484, 487 (2008) (providing that an action involving the interpretation of a contract and statutes is an action at law); *Holmes v. McKay*, 334 S.C. 433, 439, 513 S.E.2d 851, 854 (Ct.App.1999) (stating that whether an agency relationship exists is a question of fact).

---

3. This appeal raised an unpreserved issue of whether North Carolina or South Carolina law applies to this case. *See Kiawah Prop. Owners Grp. v. Pub. Serv. Comm'n*, 359 S.C. 105, 113, 597 S.E.2d 145, 149 (2004) (providing that an argument not made to an intermediate appellate court and ruled on by that court is not preserved for review in the supreme court or court of appeals). However, Respondents conceded this issue during oral argument.

## I. The Agreement

■ Wife argues the mutual funds of the fourth transfer are not part of Decedent's estate because the plain language of the Agreement states that both Wachovia and Decedent's actions prior to Wachovia's actual knowledge of Decedent's death would remain enforceable. Moreover, Wife contends Wachovia retained authority to transfer the mutual funds even after it learned of Decedent's death, and Wachovia complied with those instructions before that time. We disagree.

■ In interpreting a contract, a court must "ascertain and give legal effect to the intentions of the parties as expressed in the language of the [contract]. If a contract's language is clear and capable of legal construction, this [c]ourt's function is to interpret its lawful meaning and the intent of the parties as found in the agreement." *Cullen v. McNeal*, 390 S.C. 470, 481–82, 702 S.E.2d 378, 384 (Ct.App.2010) (alterations in original) (internal citations and quotation marks omitted).

The "prior actions" clause refers to both Decedent's and Wachovia's conduct. However, that clause did not render Decedent's instruction eternally enforceable after Wachovia learned of Decedent's death. The plain language of the Agreement shows Wachovia's authority to act for Decedent terminated upon Wachovia's "actual knowledge" of death, and the actions of either party would remain valid if those actions occurred before that time. Consequently, whether the mutual funds in question are part of Decedent's estate depends upon whether Decedent's and Wachovia's conduct was sufficient to complete the transfers before Wachovia learned of Decedent's death.

## II. Article 8

Wife argues the probate court erred in holding the mutual funds of the fourth transfer are part of Decedent's estate. She maintains the agency rule that an agent lacks authority to act for a principal after the principal's death does not apply to this action because the letter was an "effective" entitlement order under Article 8. Specifically, she contends "effective" entitlement orders transfer rights to financial assets the date they are made, and even if they do not, entitlement orders

remain "effective" such that they may be completed after later changes in circumstance. We disagree.

As an initial matter, Respondents have not cross-appealed the probate court's holding that the mutual funds at issue are "financial assets" falling within Part 5 of Article 8. Nor have Respondents cross-appealed the probate court's holding Wachovia was a securities intermediary and that Decedent was an entitlement holder with a securities entitlement in the instruments at issue.[4] Thus, those issues are not before this court. *See Commercial Credit Loans, Inc. v. Riddle,* 334 S.C. 176, 187, 512 S.E.2d 123, 129 (Ct.App.1999) (providing that a holding contested by a respondent is the law of the case where the respondent failed to cross-appeal that holding).

As an entitlement holder, Decedent could begin the process of transferring a security entitlement by issuing an "entitlement order." An entitlement order is "a notification communicated to a securities intermediary directing transfer or redemption of a financial asset to which the entitlement holder has a security entitlement." S.C.Code Ann. § 36–8–102(a)(8) (2003). An entitlement order is "effective" if it is "made by the appropriate person"—in this case, the entitlement holder. S.C.Code Ann. § 36–8–107(a)(3), (b)(1) (2003). The "effectiveness" of an entitlement order "is determined as of the date" it is made, and it "does not become ineffective by reason of any later change of circumstances." S.C.Code Ann. § 36–8–107(e) (2003).

---

4. In simple terms, a person becomes an entitlement holder by acquiring a security entitlement, which generally occurs when a security is credited to the person's account with a securities intermediary. *See* S.C.Code Ann. § 36–8–102(a)(7) (2003) (providing that an "entitlement holder" is "a person identified in the records of a securities intermediary as the person having a security entitlement against the securities intermediary"); S.C.Code Ann. § 36–8–102(a)(17) & official cmt.17 (2003) (providing that a "security entitlement" refers to a person's batch of rights against the securities intermediary and property interest in securities credited to his account by the securities intermediary); S.C.Code Ann. § 36–8–501(b)(1) (2003) (providing that a person acquires a security entitlement if a securities intermediary does any of the following three things: "(1) indicates by book entry that a financial asset has been credited to the person's securities account; (2) receives a financial asset from the person or acquires a financial asset for the person and, in either case, accepts it for credit to the person's securities account; or (3) becomes obligated under other law, regulation, or rule to credit a financial asset to the person's securities account").

Like the issues addressed earlier in this section, Respondents have not cross-appealed the probate court's holding that Decedent's letter to Wachovia was an entitlement order and that Decedent was an appropriate person. Consequently, those issues are not before this court. *See Commercial Credit Loans, Inc.*, 334 S.C. at 187, 512 S.E.2d at 129 (providing that a holding contested by a respondent is the law of the case where the respondent failed to cross-appeal that holding).

■ The parties' arguments present only two questions: (1) does Article 8's use of the term "effective" indicate an entitlement order completes a transfer of securities at the time the entitlement order is made, and (2) if the entitlement order does not complete the transfer in itself, does Article 8's provision that an entitlement order "remains effective" displace agency rules such that a securities intermediary has authority to complete the transfer after the entitlement holder's death? We answer both questions in the negative, and we hold the probate court properly found the mutual funds of the fourth transfer are part of Decedent's estate.

■ As a general rule, an "agency terminates upon the death of the principal.... [T]he authorized acts of the agent are in their nature the acts of the principal, and by legal fiction the agent's exercise of authority is regarded as an execution of the principal's continuing will." *Carver v. Morrow*, 213 S.C. 199, 204, 48 S.E.2d 814, 817 (1948) (citations omitted). Accordingly, actions by the principal or the agent in contemplation of a transaction before the principal's death generally do not preserve the agency for the completion of that transaction. *See* C.J.S. *Agency* § 122 (2003) ("The fact that the agent has performed, as authorized, one or several acts of that which was contemplated as a single transaction does not operate to preserve or keep alive the power until the completion of the transaction.").

Principles of agency supplement the Uniform Commercial Code (the U.C.C.) "[u]nless displaced by the particular provisions of the" U.C.C. S.C.Code Ann. § 36–1–103 (2003). "Only where the U.C.C. is incomplete does the common law provide applicable rules," and "[d]isplacement occurs when one or more particular provisions of the U.C.C. comprehensively address a particular subject." *Hitachi Elec. Devices (USA)*,

*Inc. v. Platinum Techs., Inc.*, 366 S.C. 163, 170, 621 S.E.2d 38, 41 (2005) (citation omitted).

An entitlement order does not complete a transfer of financial assets at the time it is made. Like other orders made to agents, an entitlement order is an instruction to act in the manner the principal desires. *See* § 36–8–102(a)(8) (providing that an entitlement order is "a notification communicated to a securities intermediary directing transfer or redemption of a financial asset to which the entitlement holder has a security entitlement"). The transfer of a financial asset is complete when a securities intermediary credits the financial asset to a person's securities account. *See* S.C.Code Ann. § 36–8–104(b) (2003) ("A person acquires a financial asset, other than a security, or an interest therein, under this chapter, if the person acquires a security entitlement to the financial asset."); *id.* § 36–8–501(b) ("[A] person acquires a security entitlement if a securities intermediary: (1) indicates by book entry that a financial asset has been credited to the person's securities account. . . .").

Moreover, the fact an entitlement order "remains effective" despite later changes in circumstance does not displace the agency rule relevant to this action. An entitlement order's "effectiveness" does not refer to the securities intermediary's power to complete the transfer. Rather, "effectiveness" is a term used by Article 8 to frame whether a securities intermediary is liable for a transfer of financial assets made pursuant to an entitlement order.[5] *See* S.C.Code Ann. § 36–8–507(b) (2003) ("If a securities intermediary transfers a financial asset pursuant to an ineffective entitlement order, the securities

---

5. A comparison of Revised Article 8 with Original Article 8 is instructive on this issue. Section 107 of Revised Article 8 replaced section 308 of Original Article 8, and Revised Article 8 was specifically created to address the development of the financial assets' indirect holding system by implementing new terms such as "security entitlement," "entitlement holder," and "entitlement order." *See generally* S.C.Code Ann. § 36–8–101 Prefatory Note (2003) (tracing the history and development of the securities markets). Section 107 of Revised Article 8 retains most of the substance of section 308 and applies that substance to security entitlements. *Compare* S.C.Code Ann. § 36–8–308(4)–(5), (7), (10) (Supp.2000) (providing that (1) an "instruction" was an order by an "appropriate person" requesting the transfer of a security be registered, and an "appropriate person" included the registered owner of the security; and (2) whether someone signing the purported instruc-

intermediary shall reestablish a security entitlement in favor of the person entitled to it, and pay or credit any payments or distributions that the person did not receive as a result of the wrongful transfer. If the securities intermediary does not reestablish a security entitlement, the securities intermediary is liable to the entitlement holder for damages.").

Once one understands the import of finding an entitlement order "effective," it becomes clear that Revised Article 8 does not comprehensively address the agency rules relevant to this appeal. The fact that an entitlement order is effective does not establish that the transfer is in fact complete or deemed complete, nor does it establish that the securities intermediary retains the authority to complete the entitlement order. Therefore, whether the mutual funds of the fourth transfer are part of Decedent's estate depends upon whether Wife's accounts were credited before Wachovia learned of Decedent's death.

■ Here, the probate court erred in finding the mutual funds of the third transfer were not part of Decedent's estate.[6] However, that issue is not properly before this court. Respondents never cross-appealed to the circuit court that those

tion was an "appropriate person" was determined from the date of signing, and an instruction made by the appropriate person did not "become unauthorized ... by virtue of any subsequent change of circumstances"), *with* S.C.Code Ann. §§ 36–8–102(a)(8) & 107(a)(3), (8), (b)(1), (e) (2003) (providing that (1) an entitlement order directs transfer of a financial asset; (2) an entitlement order is "effective" if it is made by the entitlement holder; and (3) the "effectiveness" of an entitlement order "is determined as of the date" it is made, and it "does not become ineffective by reason of any later change of circumstances"). However, section 107's use of "effective" replaced section 308's use of "authorized." The Amended Official Comments of section 308 explained that its use of "authorized" did not refer to agency authority but rather determined whether an issuer who registered the transfer of a security could be held liable for a transfer under section 311 of Original Article 8. *See* S.C.Code Ann. § 36–8–308 amended official cmt.6 (Supp.2000) (providing that although an "instruction speak[s] as of the date of signing" and "do[es] not become 'unauthorized' (section 311) because [the appropriate person] dies," the "[a]uthority to deliver a certificated security and thus to complete the transfer is not covered by" section 308). This is a similar function to the Revised Article 8's use of the term "effective."

6. The Wealth Manager testified the third transfer was not settled until after Wachovia learned Decedent passed away. And although the

mutual funds were part of the estate, and in fact, Respondents conceded the issue during the circuit court hearing. Therefore, the probate court's holding that the mutual funds from the third transfer were not part of the estate is the law of the case. *See Commercial Credit Loans, Inc.*, 334 S.C. at 187, 512 S.E.2d at 129 (providing that a holding contested by a respondent is the law of the case where the respondent failed to cross-appeal that holding).

■ As to the mutual funds of the fourth transfer, the probate court properly found their transfer was not completed before Wachovia learned of Decedent's death. The Wealth Manager testified she believed the trust department instructed the appropriate persons to transfer the mutual funds before Decedent died. However, the record did not include evidence of when the trust department in fact issued instructions to transfer the mutual funds, and more importantly, nor did the record include evidence Wife's account was credited with the mutual funds before Wachovia learned of Decedent's death. The only evidence the trust department actually made the instructions and credited the account was when settlement of the transfer was reflected on the account, and that date occurred three months after Wachovia gained actual knowledge of the death. Accordingly, even if the time of credit and settlement were different, we have no way of knowing when the credit occurred. Therefore, the probate court's holding that the mutual funds of the fourth transfer are part of the estate is supported by the evidence and not affected by an error of law.

### III. Completed "So Far as Decedent Could Do So"

Even if Article 8 did not deem the fourth transfer complete, Wife argues the transfer was sufficiently complete under the

---

Wealth Manager testified she believed the trust department executed the transfer instruction before that time, the Trust Officer testified the trust department's role in executing those instructions merely constituted sending instructions to Wachovia's back office. No party introduced testimony indicating the trust department, the back office, or some other entity in fact credited those mutual funds to Wife's account before Wachovia learned of Decedent's death. Accordingly, the probate court's finding "Wachovia took the actions necessary to effectuate" the third transfer before it knew of Decedent's death was not supported by evidence.

law of gifts. Specifically, she maintains an *inter vivos* gift requires intent and delivery only "so far as the donor can make it so," and once she provided Wachovia with the instruction letter, she could do no more to ensure the transfer occurred.

Wife makes a different argument on appeal to this court than she did on appeal to the circuit court. On appeal to the circuit court, she argued the transfers constituted completed *inter vivos* gifts because Wachovia lacked notice of Decedent's death when the transfers were made. Consequently, her argument is not preserved for review. *See Kiawah Prop. Owners Grp.*, 359 S.C. at 113, 597 S.E.2d at 149 (providing that an argument not made to an intermediate appellate court and ruled on by that court is not preserved for review in the Supreme Court or Court of Appeals); *cf. Taylor v. Medenica*, 324 S.C. 200, 216, 479 S.E.2d 35, 43 (1996) (holding that an issue was not preserved because the appealing party argued a different ground at trial than the party argued on appeal).

## CONCLUSION

For the aforementioned reasons, the ruling of the probate court is

**AFFIRMED.**

HUFF and WILLIAMS, JJ., concur.