HILL, J.:
**629 This appeal concerns the scope of S.C. Code § 15-51-40 (Supp. 2017) as it relates to an unwed father's right to share in the proceeds of the settlement of a wrongful death action arising out of a child's tragic death during delivery. Because we find evidence supporting the finding of the probate court that the father failed to reasonably support or otherwise provide for the needs of the child, we reverse the order of the circuit court and reaffirm the ruling of the probate court.
I.
Lauren Murphy and Mark Collins met in July 2011 while working together at Wal-Mart. They were both unmarried, but dating other people. They became romantically involved in August 2011, around the time Murphy ended her relationship with Jeremy Fields. Their intimate relationship continued until early October 2011, when Murphy informed Collins she was pregnant. According to Collins, Murphy told him at the time she "did not think" Fields was the father because of a previous health diagnosis Fields had received. Collins assured Murphy he would be an active father.
**630 The pair soon broke up, however. Murphy reunited with Fields, and Collins pursued another relationship. Murphy then advised Collins that Fields was her child's father, and listed Fields as the father at her initial pre-natal doctor's visit in November 2011.
In December 2011, Collins and Murphy attended the first trimester ultrasound together. Although the evidence is conflicting, Collins claims he desired to continue supporting Murphy's pregnancy, but she blocked his calls and prohibited him from attending further medical appointments. It is undisputed Collins did not attend any more appointments. Nor did he pay or offer to pay for any pre-natal care, although there is evidence Murphy was covered by Medicaid.
On June 12, 2012, Murphy delivered a baby girl, Tynslee. Tragically, Tynslee died about an hour after her birth. Murphy listed Fields as the father on Tynslee's birth and death certificates, and in the obituary. Collins, unaware Murphy had gone to the hospital, learned of Tynslee's death from his sister.
In July, Murphy and Collins met and agreed to split the cost of a DNA paternity test, which ultimately proved Collins was Tynslee's father. After being appointed personal representative for Tynslee's estate, Murphy brought a wrongful death and survival action against Tynslee's medical providers for malpractice. Murphy listed both Fields and Collins as Tynslee's possible father in her August 2012 petition to be appointed *162 personal representative, although Fields was later dismissed.
In February 2014, the circuit court approved partial settlement of the wrongful death and survival action. Murphy then petitioned to deny Collins any interest in the wrongful death proceeds, relying on § 15-51-40, which governs allocation of the proceeds in a wrongful death action, and authorizes a parent to move to deny or limit another parent's interest in the proceeds. The probate court granted the petition, ruling in a thoughtful written order that the greater weight of evidence established Collins had failed to provide Tynslee reasonable support or otherwise provide for her needs within the meaning of § 15-51-40.
**631 Collins appealed the probate court order. The circuit court reversed the probate court, reasoning the statute required Collins only to provide reasonable support during Tynslee's minority, which it interpreted as the time between her birth and death. Given the brevity of Tynslee's life, Collins' uncertainty at the time he was her father, and finding Tynslee's medical costs had been borne by Medicaid, the circuit court found there was no evidence supporting the ruling of the probate court. The circuit court succinctly ruled:
Pursuant to the statute, the period of time relevant to the Court's determination of whether Appellant Collins provided reasonable support for the needs of his daughter was during her "minority." In this case, Tynslee's minority was a period that consisted of mere minutes to hours between her birth and her death, during which time emergency medical care was being administered.
The Probate Court found that the burial, funeral, memorial and legal expenses and time spent in pursuit of the wrongful death action constituted "unusual necessities" under S.C. Code § 63-5-20 ( [A] ) which, if not provided by the statutory beneficiary, would justify the divestment of proceeds. This court finds that none of these were incurred within the statutorily-defined relevant time period under S.C. Code § 15-51-40. Therefore, evidence of the failure to pay these expenses is not evidence which reasonably supports the findings of the Probate Court.
Murphy appeals this ruling, challenging the circuit court's interpretation of § 15-51-40.
II.
Because a proceeding under § 15-51-40 is an action at law, we must affirm the probate court's factual findings unless no evidence supports them. In re Howard , 315 S.C. 356, 361, 434 S.E.2d 254, 257 (1993). We are free to decide questions of law de novo. See Neely v. Thomasson , 365 S.C. 345, 350, 618 S.E.2d 884, 886 (2005). Statutory construction is a question of law, Sparks v. Palmetto Hardwood, Inc. , 406 S.C. 124, 128, 750 S.E.2d 61, 63 (2013), which we may approach with no deference due the probate or circuit court; but we are bound by the probate court's findings of fact if any evidence supports them.
**632 III.
A. Development of S.C. Code § 15-51-40 since 1994
Before we journey into the meaning of § 15-51-40, we take a step back and view the statute in context, revisiting its telling recent history. As of our supreme court's decision in Ballard v. Ballard , 314 S.C. 40, 443 S.E.2d 802 (1994), the statute read in pertinent part as follows:
In every such action the jury may give such damages ... as they may think proportioned to the injury resulting from such death to the parties respectively for whom and for whose benefit such action shall be brought. And the amount so recovered shall be divided among the before-mentioned parties in such shares as they would have been entitled to if the deceased had died intestate and the amount recovered had been personal assets of his or her estate.
S.C. Code Ann. § 15-51-40 (1976).
In Ballard , a mother obtained a wrongful death settlement arising out of her 18-year-old daughter's death. Ballard , 314 S.C. at 41, 443 S.E.2d at 802. Mother petitioned to bar Father from sharing in the proceeds, on the ground they had been divorced for three *163 years, during which time Father had not visited daughter or contributed to daughter's support. Id. Our supreme court affirmed the trial court's denial of Mother's petition, holding § 15-51-40
allow[s] a total recovery equal to those damages proved to have been sustained by the statutory beneficiaries in a wrongful death action; the distribution of those damages among the statutory beneficiaries, however, is controlled strictly by the share each would take as an heir in intestacy regardless of the proportion of damages suffered by each.
Id. at 42, 443 S.E.2d at 803.
Less than three months after Ballard was decided, the General Assembly amended § 15-51-40 by adding the following sentence to the end of the statute:
However, in the event of a wrongful death of a minor, upon motion by either parent, the probate court may deny or limit either parent's entitlement for a share of the proceeds if the court determines, by a preponderance of the evidence, that the parent has refused to reasonably support the **633 decedent as defined in Section 20-7-40 and has otherwise not provided for the needs of the decedent.
1994 S.C. Acts 470, sec. 2, § 15-51-40 (1994).
In 1996, this final sentence was amended to its current form, which reads:
However, upon motion by either parent or any other party of potential interest based upon the decedent having died intestate, the probate court may deny or limit either or both parent's entitlement for a share of the proceeds if the court determines, by a preponderance of the evidence, that the parent or parents failed to reasonably provide support for the decedent as defined in Section 63-5-20 and did not otherwise provide for the needs of the decedent during his or her minority.
S.C. Code Ann. § 15-51-40 (Supp. 2017). As we shall later see, the comparative wording of these amendments bears on resolution of this appeal.
B. Elements of S.C. Code § 15-51-40
We are mindful that "statutory interpretation begins (and often ends) with the text of the statute in question. Absent an ambiguity, there is nothing for a court to construe, that is, a court should not look beyond the statutory text to discern its meaning." Smith v. Tiffany , 419 S.C. 548, 555-56, 799 S.E.2d 479, 483 (2017) (citations omitted). The plain language of § 15-51-40 allows the probate court, upon motion, to deny or limit wrongful death proceeds a parent would otherwise be entitled to for the wrongful death of a decedent if the court determines two elements by the greater weight of the evidence: that the parent (1) failed to reasonably provide support for the decedent as defined in S.C. Code § 63-5-20, and (2) did not otherwise provide for the needs of the decedent during his or her minority.
i. Reasonable Support
To construe the first element, we must consider the language of § 63-5-20(A) :
Any able-bodied person capable of earning a livelihood who shall, without just cause or excuse, abandon or fail to provide reasonable support to his or her ... minor unmarried **634 legitimate or illegitimate child dependent upon him or her shall be deemed guilty of a misdemeanor.... As used in this section "reasonable support" means an amount of financial assistance which, when combined with the support the member is reasonably capable of providing for himself or herself, will provide a living standard for the member substantially equal to that of the person owing the duty to support. It includes both usual and unusual necessities.
S.C. Code Ann. § 63-5-20(A) (Supp. 2017).
The probate court found Tynslee's pre-natal and birth-related medical expenses were usual necessities, none of which Collins paid or offered to pay, even after his paternity was established. The circuit court disagreed, finding there was no necessity to pay the medical expenses because they were covered by Medicaid, there was no evidence of any unpaid medical bills, and Medicaid has not sought reimbursement.
*164 We agree with the probate court. Collins is able-bodied and capable of earning a livelihood; he works for a major corporation. Although the record is silent about whether Collins had health insurance benefits that could have covered his child's medical expenses, that silence results from Collins' own: he never spoke up to ask what he could do to contribute, content to rely on Medicaid. The "reasonable support" § 63-5-20 speaks of is the obligation of the parent-not the government-to provide financial assistance to one's child. The law imposes a duty on parents to pay their children's reasonable and necessary medical expenses, see Trident Reg'l Med. Ctr. v. Evans , 317 S.C. 346, 352, 454 S.E.2d 343, 346 (Ct. App. 1995), and a parent's duty of support does not vanish just because public assistance appears. See S.C. Code § 63-3-530(A)(14) (2010) (empowering the family court "to order support of a spouse or child, or both, irrespective of whether they are likely to become a public charge").
The record is not entirely mute, though. In her wrongful death settlement petition, Murphy agreed to satisfy any outstanding medical bills and Medicaid liens, and to withhold $3,331.50 in trust to pay them. The order of the circuit court granting her petition, and approving the settlement, required Murphy, individually and as personal representative of Tynslee's estate, to pay any such liens out of the settlement **635 proceeds. From this we infer and find there were outstanding medical expenses Tynslee incurred that Collins did not pay. See Patton v. Miller , 420 S.C. 471, 484, 804 S.E.2d 252, 259 (2017) (describing breadth of a Medicaid lien and noting "a child's representative who seeks damages for a child's medical expenses that were paid by Medicaid or some other insurer is almost certainly under a legal duty to reimburse the actual payor for at least part of the recovery").
Neither the probate court nor the circuit court found Collins was obligated to contribute to pre-natal care. We note, though, that the family court may order child support to include "the providing of necessary shelter, food, clothing, care, medical attention, expenses of confinement, both before and after the birth , the expense of educating his or her child and other proper and reasonable expenses." S.C. Code Ann. § 63-3-530 (A)(15) (2010) (emphasis supplied). And, our supreme court has held an unwed father's consent to adoption of a child placed with the prospective adoptive parents six months or less after birth was not necessary where father contributed only $11 to Mother during her pregnancy. See Roe v. Reeves , 392 S.C. 143, 154-55, 708 S.E.2d 778, 784 (2011). Rejecting father's excuse that Medicaid covered Mother, the court observed "[s]imply because she was receiving some government benefits to cover her basic needs does not relieve Father of his obligation to provide for Mother during her pregnancy." Id. at 155, 708 S.E.2d at 784.
The circuit court concluded Collins' failure to contribute to Tynslee's burial, funeral, memorial and legal expenses was immaterial to the § 15-51-40 determination because they were not incurred during Tynslee's minority. We find the circuit court's view too narrow. To illustrate, we need only consider the funeral and burial costs. The circuit court did not dispute the probate court's characterization of these expenses as necessities, and neither do we. We confirm and hold Tynslee's funeral and burial expenses are necessities her parents were obligated to provide. See In re Terrell , 48 Ohio App.2d 352, 357 N.E.2d 1113, 1116 (1976) ("The providing of a decent burial for a deceased minor child is no less a necessity arising out of the parent-child relationship than is the providing of food, shelter, clothing and other needs of a child while the child is alive. The public interest requires that a parent **636 assume responsibility not only for a minor child's needs while that child is living, but also for the funeral expenses of a minor child. Therefore, we conclude that a father's duty to support a minor child includes an obligation to pay such child's reasonable funeral expenses in the event of the child's death prior to reaching the age of majority." (citation omitted) ); Rose Funeral Home v. Julian , 176 Tenn. 534, 144 S.W.2d 755, 757 (1940) ("We have little hesitation in concluding that the funeral expense incident to the burying of a minor child is to be classed as a necessity for which the parents of such child are liable."). See also *165 Jewell v. Jewell , 255 S.W.3d 522, 523 (Ky. Ct. App. 2008) ; Jones v. Jones , 883 So.2d 207, 213 (Ala. Civ. App. 2003).
The circuit court erred in reading into § 63-5-20(A) a requirement that the necessities be incurred during the child's minority. We hold the term "minority" as used in § 15-51-40 does not limit or affect the duty § 63-5-20 imposes on parents to provide for their child's necessities. To rule otherwise would insulate a parent from liability not only for a minor child's funeral and burial expenses, but also for pre-natal care. Such a result would undercut the clear legislative intent to the contrary expressed in similar statutes addressing parental support obligations. See S.C. Code § 63-3-530 (2010) ; S.C. Code Ann. § 63-9-310(A)(5)(b) (Supp. 2017) (noting unwed father's consent to or relinquishment of child for adoption required when, inter alia, "the father paid a fair and reasonable sum, based on the father's financial ability, for the support of the child or for expenses incurred in connection with the mother's pregnancy or with the birth of the child, including, but not limited to, medical, hospital, and nursing expenses."). Statutes addressing similar subjects should be similarly construed. See Beaufort Cty. v. S.C. State Election Comm'n , 395 S.C. 366, 371, 718 S.E.2d 432, 435 (2011) ("[I]t is well settled that statutes dealing with the same subject matter are in pari materia and must be construed together, if possible, to produce a single, harmonious result."). The legislature meant to parallel, not distort, the parental support obligations found in other statutes. We do not think by amending § 15-51-40 as it did, the legislature meant to endorse some notion that a parent has no legal obligation of support for a child's expenses except those incurred after birth but before death, a notion **637 that has no support in our statutory law nor in the reality of how responsible parents act. We therefore hold the probate court correctly found the greater weight of the evidence showed Collins failed to reasonably support Tynslee.
ii. Needs of Decedent
This brings us to the second element: whether Collins failed to "otherwise provide for the needs" of Tynslee during her minority. The circuit court found that, due to Tynslee's short life and Collins' lack of certainty during it that he was her father, there was no evidence he failed to provide for her needs while she was alive. To reach this conclusion, the circuit court reached beyond the plain language of § 15-51-40 and implied an exception excusing Collins from compliance. In essence, the circuit court transported § 63-5-20's "just cause or excuse" provision to the second element of the § 15-51-40 test.
We understand how the circuit court could have arrived at this result, but find the route unwarranted. And this is where the significance of the 1994 and 1996 amendments to § 15-51-40 enacted in the wake of Ballard comes into view, and how the mischief the changes aimed to avoid spotlights legislative intent. The 1994 amendment stated that upon motion a parent could be divested of wrongful death proceeds "in the event of the wrongful death of a minor" if the parent failed to provide reasonable support and "has otherwise not provided for the needs of the decedent." Note the 1994 amendments applied only in the event of a minor's wrongful death, and did not limit the parent's obligation to provide for his child's needs to the period of minority. The 1996 amendments, however, expanded the divestment provision from "minor" decedents to any "decedent having died intestate." It retained the reasonable support element incorporating § 63-5-20, but recast the second element to require proof that the parent "did not otherwise provide for the needs of the decedent during his or her minority."
The 1996 amendment fixed a potential problem embedded in the 1994 amendment, which applied only to minor decedents. If the decedent was an adult, the 1994 amendment did nothing **638 to strip an absent and non-supporting parent's right to share the wrongful death proceeds, the same windfall the statute allowed in Ballard .
The 1996 revision closed this loophole, but the circuit court's interpretation would reopen it. Using the circuit court's construction, if the father of an adult child whom he had not supported had died intestate by wrongful death, § 15-51-40 would not bar or limit the father's right to the wrongful death settlement proceeds as long as he could show *166 that, during the child's minority, he had no knowledge he was the father.
We therefore hold § 15-51-40's final phrase, "did not otherwise provide for the needs of the decedent during his or her minority," means what it says, and contains no exception excusing compliance, including lack of knowledge of paternity. See Roschen v. Ward , 279 U.S. 337, 339, 49 S.Ct. 336, 73 L.Ed. 722 (1929) ("[T]here is no canon against using common sense in construing laws as saying what they obviously mean.") (Holmes, J.). When, as here, the words of the statute are plain and reflect legislative intent unambiguously, we must enforce them according to their terms. See Cabiness v. Town of James Island , 393 S.C. 176, 192, 712 S.E.2d 416, 425 (2011). It was up to the General Assembly to weigh a father's interest in these situations and strike the balance. A father may suffer profound loss in such circumstances, but § 15-51-40 nevertheless limits the father's right to compensate for the loss out of wrongful death proceeds. Because evidence supports the probate court's finding Collins did not provide for Tynslee's needs during her life, however brief, we uphold the probate court's ruling as to the second element of § 15-51-40.
We reverse the order of the circuit court and affirm the probate court's ruling denying Collins any interest in the wrongful death proceeds.
REVERSED.
SHORT and THOMAS, JJ., concur.